[Crim. No. 15641. In Bank. Dec. 31, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDREW MARES MIJARES, Defendant and Appellant.

## COUNSEL

Marshall Miles, under appointment by the Supreme Court, and Arthwell C. Hayton, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Gaye W. Herrington, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—A jury found defendant Andrew Mares Mijares guilty of possession of heroin in violation of section 11500 of the Health and Safety Code. He admitted two prior felony convictions, one of possessing and one of furnishing heroin, and was therefore sentenced to prison for the 15-year minimum term prescribed by law.[1] He appeals from the judgment of conviction.

The principal question presented is whether the act of handling a narcotic for the sole purpose of disposal constitutes "possession" within the meaning of section 11500. We do not here reach the question of whether the sentence imposed pursuant to statute constitutes cruel or unusual punishment. (Cal. Const., art. I, § 6.)

Defendant was observed by Mrs. Francine Beard as he leaned inside a parked car and slapped a passenger across the face. Moments later Mrs. Beard further observed defendant remove something resembling a farmer's red handkerchief from the car and throw the object into a nearby field. Defendant returned to the automobile and drove off. Mrs. Beard telephoned the Ontario Police Department and reported the events and the license number of the vehicle.

Meanwhile, defendant had driven his car with the passenger, one Johnny Rodriguez, to the Ontario Fire Department. Defendant ran to the door of

---

[1]Because of defendant's two prior felony narcotics convictions, paragraph three of section 11500 is operative. It provides in part: "If such person has been previously convicted two or more times of any felony offense described in this division . . ., the previous convictions shall be charged in the indictment or information and, if found to be true by the jury upon a jury trial or by the court upon a court trial or if admitted by the person, he shall be imprisoned in the state prison for a period of 15 years to life and shall not be eligible for release upon completion of sentence or on parole or any other basis until he has been imprisoned for a period of not less than 15 years in the state prison."

the fire station and announced: "I have a guy out here that needs oxygen or needs air." Rodriguez was removed from the car and placed on the ground; he was described as blue and not breathing. When breathing was finally restored by means of resuscitation, Rodriguez was taken to a hospital by ambulance. Defendant, after shouting his license number to one of the firemen, left the station, but returned in less than a minute and waited until the police arrived.

Deputy Henry of the San Bernardino County Sheriff's office arrived at the station shortly thereafter. He had been summoned to the field where Mrs. Beard had observed the handkerchief-wrapped object thrown from the car. Deputy Henry's investigation uncovered two handkerchiefs, a piece of white cloth which contained an eyedropper, and a piece of yellow tissue paper. Inside the paper was a teaspoon; the bowl of the spoon contained a white powder and a white-greyish paste-type substance adhering to the bottom of the bowl, and chemical analysis confirmed the presence of heroin. The officer also discovered four hypodermic needles, two of which were covered by a plastic case to keep the needle portion sterile; one was exposed, and the fourth had cardboard or paper wrapped around the point. He proceeded to the fire station and arrested defendant, who fitted the description provided by Mrs. Beard.

At trial, the jury could have believed either of two accounts of events which had purportedly transpired prior to the time Mrs. Beard observed defendant slapping Rodriguez. First, there was sufficient evidence to conclude that both defendant and Rodriguez had taken heroin on the day in question. Sergeant Wickum testified he noted that defendant had two partially scabbed puncture wounds in the area above his left elbow and that defendant had some of the characteristics of a person under the influence of heroin. There was also testimony, though conflicting, that defendant and Rodriguez admitted both had "fixed" that day.[2]

On the other hand, an equally credible account of the day's events indicated that defendant had picked up his friend Rodriguez on a street

---

[2]On direct examination by defense counsel, Rodriguez said, "[Defendant] didn't have anything to do with it, that it wasn't his heroin or anything." He also answered "No, sir," to the following questions: "Did you ever see [defendant] fix with heroin that night at all?" and "Did you at any time hand over any heroin to [defendant]?"

There was testimony by Deputy Bowlin, however, that Rodriguez told him, "We fixed." Deputy Bowlin also testified that defendant told him the two men had fixed.

At trial, defendant denied taking heroin himself or being present when Rodriguez had fixed. Deputy Henry testified that while he was in a position to observe defendant at the fire station, he did not make a determination of whether defendant appeared to be under the influence of any narcotic or drug nor did he recall defendant having any of the characteristics of one under the influence of heroin.

corner; that Rodriguez appeared drowsy, about to lose consciousness; that defendant drove him around for a few minutes hoping to revive him; but that when they stopped the car Rodriguez became unconscious. At that moment defendant began to slap Rodriguez, again for the purpose of reviving him. When that failed, he believed medical help was necessary because he thought his friend was overdosing. He looked inside Rodriguez' pockets and found the narcotics outfit which he believed might still be in Rodriguez' possession if he had recently taken drugs. He then threw the outfit out of the car, and drove to the fire station.

Defendant does not assert there was insufficient evidence to justify a finding that he was in momentary "possession" of the heroin. Defendant contends, rather, the jury should have been instructed that if it believed he did not himself use heroin on the day in question or handle it in furnishing narcotics to Rodriguez but instead had no contact with the narcotic other than to remove it from Rodriguez' pocket for the purpose of disposal, such handling is insufficient for conviction of the crime of possession as defined by section 11500. We find this contention persuasive.

While neither this court nor the courts of appeal have had the opportunity to decide the question of whether a momentary handling of drugs is sufficient to constitute possession within the meaning of section 11500 or section 11530 (possession of marijuana) of the Health and Safety Code, both the Second and Seventh Circuits have rejected the notion that possession under the federal statutes includes such transitory activity.[3]

In *United States* v. *Santore* (2d Cir. 1959) 290 F.2d 51, the only evidence of possession introduced against one defendant was his furtive attempt to remove a package of narcotics from the trunk of a parked automobile, but after grabbing the package he was frightened away, leaving the narcotics behind. The court stated: "The Government argues that Narducci's momentary grasp of the package constituted 'possession' of it by him and that at that moment the crimes with which he and Tarlentino were

---

[3] 21 United States Code section 174 provides in part: "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States [shall be imprisoned and may be fined] . . . .

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

charged were completed. We cannot agree." (290 F.2d at p. 64; see on rehg. en banc (2d Cir. 1960) 290 F.2d at p. 79; see also *United States* v. *Gregory* (2d Cir. 1962) 309 F.2d 536, 538-540 (Kaufman, J., dissenting).)[4] In *United States* v. *Landry* (7th Cir. 1958) 257 F.2d 425, 431, the Seventh Circuit likewise reversed a federal narcotics conviction, declaring: " 'To "possess" means to have actual control, care and management of, and not a passing control, fleeting and shadowy in its nature.' "

Further support for the conclusion that the conduct of defendant does not constitute possession can be found by analogy to certain of the prohibition cases. Thus, in *Garland* v. *State* (1933) 165 Miss. 136 [146 So. 637], the defendant was convicted of illegally possessing intoxicating liquor. Police officers broke into the defendant's home, whereupon she picked up a homemade jug, ran to the back door, and threw the jug onto the steps, breaking it. The Supreme Court of Mississippi, in reversing, assumed that any possession before the defendant picked up the jug rested in her husband, and then declared: "It is true the evidence showed that [defendant] in trying to destroy the jug of whiskey had the manual possession of it, but under the law it does not conclusively follow that such possession is unlawful. . . . Her possession was for the sole purpose of putting an end to the unlawful possession of the liquor by her husband." (146 So. at p. 638.) To paraphrase *Garland,* in throwing the heroin out of the car, defendant Mijares maintained momentary possession for the sole purpose of putting an end to the unlawful possession of Rodriguez. (See also *State* ex rel. *Atty. Gen. Harbin* v. *State* (1923) 210 Ala. 55 [97 So. 426].)

Courts of this state have spoken on the issue of momentary possession on three occasions, and each time there was the clear implication that given the proper factual surroundings, such limited handling would not support a conviction. Thus, in *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867 [59 Cal.Rptr. 440, 428 P.2d 304], the defendant maintained he ran with and discarded a narcotics kit because he sensed he was being framed by his female companion, and attempted "to get out of the frame" by throwing the

---

[4]Under 21 United States Code section 174, possession only operates to create a presumption of transportation, concealing, receiving, buying, selling or importation. The applicability of the federal cases to our decision here is nonetheless direct. In *Santore* the court said such momentary possession was insufficient to justify a presumption of the activities which constitute the substantive crimes defined in section 174. The court thus related possession to the dangers which Congress sought to eliminate when it made illegal the acts of transporting, concealing, receiving, buying, selling and importing narcotics. A momentary grasp was not sufficiently related to these dangers; likewise the momentary handling by defendant Mijares was only in order to abandon the drug and not for any of the narcotic activities which the laws of this state seek to prevent.

object over a fence. We granted a writ directing the magistrate to permit defendant, as a defense to possession, to introduce evidence concerning the fleeting purpose of his taking the narcotics outfit and casting it over the fence.

In *People* v. *Widener* (1963) 220 Cal.App.2d 826 [34 Cal.Rptr. 130], the defendant was arrested in his car in which police officers found two partially burned marijuana cigarettes and a quantity of illegal pills. The defendant explained at trial that during a Halloween party in his home the previous week these items had been left behind, and he had taken them with him that evening for disposal. Rather than flatly holding that possession for disposal is nevertheless possession under the statute, the court said, "Even if it be assumed that defendant's own explanation of his reasons for carrying the narcotic constituted a defense, the jury was not required to believe it." (220 Cal.App.2d at p. 829.)

In *People* v. *Landry* (1951) 106 Cal.App.2d 8 [234 P.2d 736], the court in affirming a conviction of possession of heroin rejected the defendant's contention that he should have been able to introduce evidence that a third person had "planted" the drugs to entrap him. The defendant claimed that he only possessed the heroin for a few moments after its discovery, during which he attempted to flush the drugs down the toilet. The implication of the opinion was that had the defendant made a better offer of proof to demonstrate the possibility that a third person had in fact planted the drugs, his handling solely for the purpose of flushing the heroin down the toilet would have been insufficient for conviction of possession. (106 Cal.App.2d at p. 12.)

In a literal sense, defendant here physically controlled the narcotic when he removed it from the pockets of Rodriguez and threw it away. The People contend such conduct is included within the "dominion and control" test of possession. (See, e.g., *People* v. *Redrick* (1961) 55 Cal.2d 282 [10 Cal.Rptr. 823, 359 P.2d 255]; *People* v. *Noland* (1943) 61 Cal.App.2d 364 [143 P.2d 86].) The latter definition, however, is primarily used to sustain a conviction of possession when the contraband is not in the actual possession of the defendant but within his reach, or in a place where he is storing it and where it is available to him for future use. For example, in *Redrick* we held that the circumstance of the defendant being recently in possession of the key to a storeroom in which heroin was found indicated he exercised sufficient dominion and control over the drug to support a conviction of unlawful possession. Thus if defendant Mijares had thrown the heroin out of the car with the intent of retrieving it later, he would not have been abandoning the contraband and his possession, albeit constructive,

would have met the test of *Redrick*. There is, however, no evidence of the defendant's intent to return to the scene of abandonment. Indeed, his voluntary wait for the police to arrive at the fire station indicates a contrary intent.

■ The logic is inescapable and the rule is well-settled that actual abandonment of an object terminates possession thereof. (*People* v. *Showers* (1968) 68 Cal.2d 639, 644 [68 Cal.Rptr. 459, 440 P.2d 939]; *People* v. *Gory* (1946) 28 Cal.2d 450, 455 [170 P.2d 433]; *People* v. *Von Latta* (1968) 258 Cal.App.2d 329, 338 [65 Cal.Rptr. 651].) It would be incongruous to adhere to cases declaring that abandonment concludes an existing narcotic possession and then hold that during the brief moment involved in abandoning the narcotic, a sufficient possession which did not previously exist somehow comes into being to support a conviction for possession of contraband.

The rule urged by the People could result in manifest injustice to admittedly innocent individuals. For example, had Mrs. Beard, the woman who observed defendant throwing the heroin out of the car, briefly picked up the package and identified the substance as heroin and then placed the outfit back on the ground, during the time after which she had realized its narcotic character she, too, would have been guilty of possession under an unduly strict reading of section 11500, notwithstanding the fact that her transitory handling of the contraband might have been motivated solely by curiosity. ■ We cannot read the possession statutes to authorize convictions under such guileless circumstances.

■ We emphasize that our decision in no way insulates from prosecution under the narcotics laws those individuals who, fearing they are about to be apprehended, remove contraband from their immediate possession. (See, e.g., *People* v. *Groom* (1964) 60 Cal.2d 694 [36 Cal.Rptr. 327, 388 P.2d 359]; *People* v. *Perez* (1963) 213 Cal.App.2d 436 [28 Cal.Rptr. 751]; *People* v. *Rodrigues* (1938) 25 Cal.App.2d 393 [77 P.2d 503].) We leave intact the rule that from such conduct "it could be inferred that defendant at one time exercised physical dominion" over the narcotic. (*People* v. *Groom, supra,* 60 Cal.2d at p. 697.) ■ Furthermore, certain actions relating to abandonment of narcotics may also fall within the proscription of section 135 of the Penal Code, forbidding the destruction or concealment of evidence.

■ Finally, the People contend that even if we hold that possession for the purpose of disposal is insufficient to support a conviction under section 11500, this defendant's conviction must stand because his counsel failed to request an instruction on the issue. ■ We adhere to the general rule that a court should, of its own volition, instruct on the general

principles of law governing the case; it need not, however, instruct *sua sponte* on specific elements. (See, e.g., *People* v. *Bevins* (1960) 54 Cal.2d 71 [4 Cal.Rptr. 504, 351 P.2d 776]; *People* v. *Harrison* (1969) 1 Cal. App.3d 115 [81 Cal.Rptr. 396].) ▮ "The most rational interpretation of the phrase 'general principles of law governing the case' would seem to be those principles of law commonly or closely and openly connected with the facts of the case before the court." (*People* v. *Bevins, supra,* 54 Cal.2d at p. 77.) In *People* v. *Bowens* (1964) 229 Cal.App.2d 590 [40 Cal.Rptr. 435], the court held it was reversible error for the trial court not to instruct *sua sponte* on the knowledge required for a conviction of possession of heroin. (See also *People* v. *Winston* (1956) 46 Cal.2d 151 [293 P.2d 40]; *People* v. *Candiotto* (1954) 128 Cal.App.2d 347 [275 P.2d 500], disapproved on different grounds in *People* v. *Gould* (1960) 54 Cal.2d 621, 630 [7 Cal.Rptr. 273, 354 P 2d 865]; *People* v. *Perez* (1954) 128 Cal.App.2d 750 [276 P.2d 72].)[5] ▮ It seems evident that if a trial court is required to instruct on its own motion on the subject of narcotic knowledge, it should also in the special circumstances now before us advise the jury on the issue of momentary handling prior to abandonment since such an issue goes to the very essence of the offense.

The jury should have been instructed that the possession prohibited by section 11500 of the code does not include merely handling for only brief moments prior to abandoning the narcotic.

The judgment is reversed.

Wright, C. J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

**McCOMB, J.** — I dissent. I would affirm the judgment for the reasons expressed by Mr. Justice Gardner in the opinion prepared by him for the Court of Appeal, Fourth District, Second Division (*People* v. *Mijares,* 4 Crim. 4311, filed April 15, 1971, certified for nonpublication).

---

[5]The court in *Bowens* and the three cases cited therein found that the failure to instruct was error, but was harmless because the evidence showed conclusively that the defendants had the requisite knowledge. Here, there can be no claim of harmless error. As stated previously, there was sufficient evidence that defendant possessed the heroin only for purposes of disposal. Without an instruction stating that such possession was insufficient for a conviction under section 11500, the jury could have disbelieved the other incriminating evidence and believed that he had possession only in order to abandon it; yet under the instructions as given the jury would have been required to find defendant guilty no matter which version of the evidence it believed.