**Daniel ADAMS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–450.**

Court of Appeals of Alaska.

Oct. 4, 1985.

Wendell P. Kay, Kay, Christie, Saville & Coffey, Anchorage, for appellant.

Michael S. McLaughlin, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Daniel Adams was convicted, following a jury trial, of one count of misconduct involving a controlled substance in the third degree, AS 11.71.030(a)(1), and two counts of misconduct involving a controlled substance in the fourth degree, AS 11.71.-040(a)(3)(A). The misconduct involving a controlled substance in the third degree count consisted of a charge that on August 3, 1983 Adams possessed approximately three and one-half ounces of cocaine with the intent to deliver that substance. The two counts of misconduct involving a controlled substance in the fourth degree involved charges that Adams possessed approximately one-fourth of an ounce of cocaine on August 23, 1983, and that Adams possessed approximately one-eighth of an ounce of cocaine on August 25, 1983. Judge Victor Carlson imposed a sentence of seven years with three years suspended on the possession with intent to deliver count, and sentences of three years with one year suspended on the possession of cocaine counts. The sentences were all concurrent. Adams appeals his convictions and sentences. We reverse Adams' conviction for possession of cocaine with intent to deliver but affirm his convictions and sentences for possession of cocaine.

The trial in this case focused mainly on the charge that, on August 3, 1983, Adams possessed approximately three and one-half ounces of cocaine with the intent to deliver that substance. Adams testified that he was a user of cocaine, and admitted possessing cocaine on August 25, 1983. Adams additionally indicated that he could have had the one-quarter ounce of cocaine on August 23, 1983. However, Adams testified that his possession of the three and one-half ounces of cocaine on August 3, 1983 was involuntary.

In support of his contention that he involuntarily possessed the cocaine Adams testified that Alex Resek was a cocaine dealer and that he got his cocaine from Resek. On August 3, 1983 both Alex Resek and his family and Adams and his family were in Campbell Creek Park. Daniel Adams' car, a Corvette, was parked in the lot; the top was down and the windows were open. According to Adams, Alex Resek borrowed his keys so he could listen to the radio in the Corvette. After going to the car, Resek came back to Adams and told Adams to watch the car because there was something in it. Adams testified that he concluded that Resek had left cocaine in the car, and that he told Resek to get it out. Resek refused and said he would be back. Alex Resek then left the park and did not return. Adams discovered that Resek had left a brown bag in Adams' car. Adams testified that he did not look inside the bag.

Approximately forty-five minutes after Alex Resek placed the bag in the car Mark Flechsing arrived. Flechsing was one of Alex Resek's closest collaborators in the cocaine selling operation and, unknown to Adams or Resek, was also operating as a police informant. Flechsing testified that when he arrived at the park, Alex Resek was gone. Adams gave Flechsing the brown paper bag from the car and told him to get the package out of there. Additionally, Adams instructed Flechsing to meet him at the Hall Closet, a business that Adams owned which sold drug paraphernalia. Flechsing drove off and secretly met with a police officer who took a sample of the contents of the brown package. The sample was tested. It was cocaine. Flechsing then drove to meet Adams. After Flechsing reached the Hall Closet, Alex Resek arrived and had Flechsing place the brown package in his car. The package was not taken into the Hall Closet.

Adams' defense at trial was that he had never voluntarily possessed the cocaine found in his car. He contended that Resek placed the cocaine in his car without his permission, and that when he found out it was in his car he attempted to have Resek take the cocaine out of the car. When that failed he gave the cocaine to Flechsing to return to Resek. On the other hand, the

state argued that Adams was deeply involved in Resek's cocaine selling business and that Adams' possession of the cocaine had been entirely voluntary. The state presented evidence that during the time the cocaine was in Adams' car an off-duty police officer coincidently happened to come into the park and talk to another police officer in a marked police car. The state argued that Adams had panicked and had the cocaine removed from his car because of the presence of the police, not because he involuntarily possessed the cocaine.

Judge Carlson instructed the jury on what constituted possession: "'possess' means having physical possession or the exercise of dominion or control over property. A passing control, fleeting and shadowy in nature does not constitute possession." After some deliberation the jury asked for an explanation of "passing control." The court gave the following supplemental instruction, which defense counsel objected to:

## SUPPLEMENTAL INSTRUCTION NO. 1

"Passing control" of a controlled substance is control for only such a period of time as is reasonably necessary for the possessor to learn of the nature of the substance and to make a *legal disposition of it by throwing it away, destroying it, or by giving it to police.*

If you find that the defendant had control of a controlled substance only for the purpose of putting to an end another's illegal possession, you may not find him guilty of a crime. For example, if a person finds a heroin addict unconscious on the street, empties the addict's pockets of heroin and throws the heroin away before taking the heroin addict to the hospital, that person may not be convicted for that brief control of the heroin. Similarly, if a person finds a package on the street, opens it, finds cocaine and then puts the package back down and walks away, that person may not be con-

victed for that brief control of the cocaine.

If you find that the defendant had control of a controlled substance only because another forced it upon him, *you may find the defendant guilty only if you find he did not act reasonably in disposing of it.*

"Passing control" is not a defense for the person who, having possession of a substance he knows is a controlled substance and fearing that he is about to be apprehended by police, removes the controlled substance from his immediate possession.

If you find beyond a reasonable doubt that the defendant possessed a controlled substance long enough after knowing it was a controlled substance to have had a reasonable opportunity to dispose of it through legal channels (be throwing it away or giving it to police, for example), then you may find the defendant guilty; if this has not been proved beyond a reasonable doubt, you must find the defendant not guilty. [Emphasis supplied.]

Adams argued at trial, and now argues on appeal, that the supplemental instruction was erroneous because it unduly restricted ways in which a person could have "passing control." Adams argues that if the jury believed him that Resek forced the cocaine on him by placing it in his car, the jury could have read the supplemental instruction as requiring him to get rid of the cocaine by "throwing it away, destroying it, or by giving it to the police." He argues that the jury therefore could have believed him that he got rid of the cocaine by returning it to Resek through Flechsing, and yet have convicted him under the supplemental instruction because he did not dispose of the cocaine as the instruction required.

We agree with Adams that it is a reasonable interpretation of the jury instruction that a person who has cocaine forced upon him must throw it away, destroy it, or give it to the police.[1] Therefore, we agree that

---

1. The third paragraph of the supplemental instruction indicates that if the jury found that the defendant had the controlled substance forced upon him: "you may find the defendant guilty

under the given jury instruction the jury could have believed Adams' version that he came into possession of the cocaine involuntarily and that he got rid of it as soon as possible by giving it to Flechsing to return to Resek, and still have convicted him under the supplemental instruction.

The next question is whether Adams' version of events, if believed, constitutes possession of cocaine with intent to distribute. Alaska case authority on this issue appears to be sparse. In *Moreau v. State,* 588 P.2d 275 (Alaska 1978), the supreme court dealt with a case where the defendant momentarily possessed a napkin which contained heroin residue. Moreau was staying in a house which the police entered under a search warrant. When her co-defendant, Stone, spit out the napkin, Moreau picked the napkin up and may have attempted to move towards the bathroom. The police grabbed her and took the napkin. The supreme court held that there was insufficient evidence to convict Moreau of possession of heroin. The court held that momentary possession for purposes of disposing of a controlled substance did not constitute possession. *Id.* at 286. In its holding, the court approved of the definition of possession in *United States v. Landry,* 257 F.2d 425, 431 (7th Cir.1958):

> To "possess" means to have actual control, care and management of, and not a passing control, fleeting and shadowy in nature. (Citation omitted.)[2]

*Id.*

The *Moreau* court also relied on *People v. Mijares,* 6 Cal.3d 415, 99 Cal.Rptr. 139, 491 P.2d 1115 (1971). In that case the defendant testified that in attempting to help a friend who had overdosed on drugs, he discovered a handkerchief which contained heroin. He threw the heroin out of the window of a car. *Id.* 491 P.2d at 1117. The *Mijares* court held that the defendant's

version, if believed, was not possession of heroin in violation of the statute. *Id.* 491 P.2d at 1119–20.

Additionally, Adams cites us to *State v. Callahan,* 77 Wash.2d 27, 459 P.2d 400 (1969). In that case the police, with a search warrant, entered a houseboat in Seattle. The defendant and another person were sitting at a desk in which there were pills and syringes. A cigar box filled with various drugs was on the floor between them. Other drugs were found in the kitchen and bedroom. The defendant admitted owning two guns, as well as a scale which, if operable, could be used for weighing drugs. At the time of arrest he stated that he had lived on the houseboat for two or three days prior to arrest, but at trial denied that he lived there. Additionally, he admitted that he had actually handled the drugs earlier in the day. The court held that there was insufficient evidence to establish the defendant's possession of the drugs. The court held that to be in constructive possession of drugs the state had to prove that the defendant was in dominion or control of either the drugs or the premises on which the drugs were found. *Id.* 459 P.2d at 402. In reaching its decision, the court placed weight on the fact that a witness by the name of Charles Weaver claimed sole control of the drugs.

In addition to the authority that the defendant cites, we have also considered the Model Penal Code. Section 201(4) of the Model Penal Code states, "[p]ossession is an act, within the meaning of this section, if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession."

■ The authorities to which the parties have cited us and our own research have not clearly resolved the problem. How-

---

only if you find he did not act reasonably in disposing of it." We believe it is likely that the jury would interpret the words "act reasonably" in light of paragraph one of the supplemental instruction and find that Adams could have acted reasonably with the cocaine only if he made

"a legal disposition of it by throwing it away, destroying it, or giving it to the police."

**2.** We note that this language is similar to one instruction which Judge Carlson gave on possession. *See* discussion p. 4. Adams does not object to that instruction on possession.

ever, it is clear that more is required than momentary or fleeting possession of a controlled substance; some sort of dominion or control of the substance is required. We note that the state has not cited any cases standing for the proposition that a person who has drugs forced upon him is required to dispose of the drugs by throwing them away or giving them to the police.

■ It appears to us that if the jury believed Adams' version of the events, Adams was not in possession of cocaine because he was not aware of his control of the cocaine "for a sufficient period to have been able to terminate his possession" without terminating that possession. Under Adams' version the cocaine belonged to Alex Resek. Adams came into possession involuntarily and terminated his possession as soon as reasonably possible by returning it to Alex Resek through Flechsing. This appears to us to be the sort of fleeting possession which the cases allow. We do not believe that he was required to turn the cocaine over to the police or destroy it in order to not be in possession. His returning it promptly to Resek through Flechsing would be sufficient to terminate his possession.

■ Since the jury could have understood the trial court's instructions to require Adams to terminate his possession of the cocaine by "throwing it away, destroying it, or by giving it to the police," we reverse Adams' conviction for possession of cocaine with intent to distribute. However, we affirm Adams' two convictions for possession of cocaine since he essentially admitted the incidents on which those convictions were based. Those convictions could not have been affected by the supplemental instruction or other matters which Adams raises on appeal.[3]

### Sentence

■ Adams argues that his sentence was excessive. Since we have reversed his conviction for possession of cocaine for distribution, the sentence of seven years with three years suspended that Adams received for that offense is vacated. However, Adams' two concurrent sentences of three years with one year suspended remain. Possession of cocaine is a class C felony. The maximum sentence is five years, and the presumptive sentence for a second felony offender is two years. Adams is a first felony offender. Therefore, his sentence should exceed the two-year presumptive sentence for a second felony offender only if his case can properly be classified as exceptional. *Austin v. State*, 627 P.2d 657, 658 (Alaska App.1981).

■ Adams was twenty-six at the time of this offense and was a successful businessman with no prior record other than traffic infractions. However, Judge Carlson found that Adams had "a long and substantial involvement in the cocaine business and the people involved in distributing cocaine." Judge Carlson concluded that Adams "was close to being a worst offender." There was evidence in the record to

---

**3.** Since we are reversing Adams' possession of cocaine with intent to distribute conviction we find it unnecessary to reach Adams' other points on appeal. However, in the event of a retrial, the following comments on other issues which have been raised in the appeal may be helpful:

a. Co-conspirator Statements:

Alaska Rule of Evidence 801(d)(2)(E) provides that "[a] statement is not hearsay if ... [it is] a statement by a co-conspirator of a party [made] during the course and in furtherance of the conspiracy." In order to take advantage of Evidence Rule 801(d)(2)(E), the state has the burden, by a preponderance of the evidence, to show three things before the evidence is admissible: (1) existence of a conspiracy, i.e., that there is an agreement and intent to carry out a

criminal plan, W. LaFave and A. Scott, *Criminal Law*, § 61, at 453 (1972); *Hawley v. State*, 614 P.2d 1349, 1354–55 (Alaska 1980) (the existence of the conspiracy must be shown without relying on the alleged co-conspirator statements sought to be admitted); (2) that the statement was made while the conspiracy was continuing; and (3) that the statement was made "in furtherance" of the conspiracy. *Id.*

b. Evidence From the Hall Closet:

Evidence which tended to show Adams' participation in a conspiracy to distribute drugs with Resek would be admissible under A.R.E. 401 and 404(b). However, in this trial the detailed analysis of the many items which were available for sale at the Hall Closet appeared to be unduly prejudicial. A.R.E. 403.

support the findings which established Adams' close involvement with a major cocaine distributing organization run by Alex Resek. Judge Carlson found that Adams furnished Resek with false employment records indicating that Resek was employed in Adams' business so Resek could represent to his probation officer that he was employed. In addition, Adams was found to have cocaine in his system several days after his conviction on these offenses in spite of a court order to not use or possess cocaine. We believe that the record and Judge Carlson's findings are sufficient to establish that Adams' possession of cocaine offenses were exceptional and justify the sentences which Judge Carlson imposed.[4] We therefore conclude that the sentences imposed were not clearly mistaken.

The conviction for misconduct involving a controlled substance in the third degree is REVERSED. The convictions and sentences for misconduct involving a controlled substance in the fourth degree are AFFIRMED.

Bill D. Murphree, Asst. Dist. Atty., Fairbanks, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J. and COATS and SINGLETON, JJ.

---

**4.** It appears to us from the record that it is unlikely that Judge Carlson's findings on the possession of cocaine charges would be influenced by the fact that Adams conviction for possession of cocaine with intent to deliver has been reversed. We have therefore decided these sentence appeals on that assumption in an effort to advance this litigation. We of course do not preclude Judge Carlson from reconsidering his findings in the event that Adams requests such relief. *See* Crim.R. 35.