937 So.2d 1192 (2006)
Stephen D. RAMSUBHAG, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-2621.
District Court of Appeal of Florida, Fourth District.
September 13, 2006.
Rehearing Denied October 20, 2006.
Carey Haughwout, Public Defender, and Marcy K. Allen, Assistant Public Defender, West Palm Beach, for appellant.
*1193 Charles J. Crist, Jr., Attorney General, Tallahassee, and Laura Fisher Zibura, Assistant Attorney General, West Palm Beach, for appellee.
STONE, J.
Ramsubhag appeals his conviction for possession of cocaine and possession of a schedule IV substance (alprazolam, known as Xanax). The sole issue is the trial court's failure to instruct on his theory of defense, the lawful disposition of contraband, because the instruction was not supported by the evidence. We affirm.
Paramedics found Ramsubhag passed out and slumped over the steering wheel of a parked car at 7:00 a.m. and called for police assistance. They had difficulty reviving him and, although he came to briefly, he immediately lapsed back into semi-consciousness.
The officers at the scene noticed an odor of alcohol, bloodshot eyes, and clammy skin. The keys were in the ignition and they concluded that Ramsubhag was under the influence of either alcohol, a drug, or both and decided to Marchman Act[1] him, taking him into custody. Incident thereto, the officers found a clear plastic baggie containing cocaine and seven-and-a-half loose yellow pillsXanax.
Ramsubhag told the officers present that the pills belonged to his girlfriend. At trial, however, he testified that he found the pills in the car, which belonged to his boss, and he pocketed the pills to prevent his children from exposure, with the intention of returning the pills to his boss. When asked about his statement at the scene regarding the Xanax belonging to his girlfriend, Ramsubhag answered that he had mentioned that his girlfriend took them for anxiety, but not that she owned the pills found in his pocket. Ramsubhag explained his semi-conscious state as exhaustion"I was tired, worn out." Ramsubhag also claimed that the cocaine was found, not in his front pocket, as reported by the two police officers testifying at trial, but under the seat of the car.
The trial court reasoned, in part, that even assuming the availability of a lawful disposition defense, the evidence in this case was insufficient to justify the charge, since Ramsubhag's children had been picked up by their mother ten hours prior to the police discovery of the Xanax.
We recognize that a criminal defendant is entitled to have a jury instruction on his theory of defense if there is any evidence supporting his theory. See Wright v. State, 705 So.2d 102 (Fla. 4th DCA 1998); Vazquez v. State, 518 So.2d 1348 (Fla. 4th DCA 1987). Although the trial court should not weigh the evidence for this purpose, Garramone v. State, 636 So.2d 869, 870 (Fla. 4th DCA 1994), the requested instruction must be supported by the evidence. Barkett v. Gomez, 908 So.2d 1084, 1086 (Fla. 3d DCA 2005).
Ramsubhag's requested instruction read, in relevant part:
An issue in this case is whether the Defendant intended to lawfully dispose of the contraband . . . . It is a defense to the charge of . . . if the Defendant took temporary control of the contraband in order to make a legal disposition of it by throwing it away, destroying it, or giving it to the police.
We have considered, and deem inapposite, State v. Walker, 444 So.2d 1137 (Fla. 2d DCA 1984) (holding as unconstitutional the statute requiring a prescription drug to be kept in its original container), and Fink v. Holt, 609 So.2d 1333 (Fla. 4th DCA 1992) (reversing a forfeiture of a *1194 vehicle used by a physician to transport schedule II drugs in unmarked containers).
Ramsubhag relies on Stanton v. State, 746 So.2d 1229 (Fla. 3d DCA 1999), the only Florida case involving legal disposition as a defense to possession. There, a drug dealer approached the defendant, a reformed crack-user who had successfully avoided backsliding into usage for some time. The dealer offered a free sample; the defendant declined. The dealer persisted, and the defendant decided to accept the rock and turn him in. The defendant immediately located a policeman. He placed the rock on a barricade, explained the circumstances that had brought it to him, and offered his assistance to police in apprehending the determined dealer. Notwithstanding the defendant's intentions, the police officer promptly arrested him for possession. The Third District looked to decisions in both Alaska and California for guidance on whether a person who takes temporary possession of a controlled substance with the sole intention of turning it over to the authorities is guilty of a crime, and reversed the conviction. The court reasoned:
We do not think that a person who takes temporary possession of contraband for the sole purpose of turning it into the authorities, and promptly does so, is guilty of a crime. If a person finds contraband washed up on the beach, or floating in the sea, and takes the contraband forthwith to the authorities, we do not think that the law does, or is intended to, criminalize temporary possession for that purpose. Likewise if a parent discovers contraband in possession of his or her child, and disposes of it, we do not think the law criminalizes the parent's temporary possession.
It has been held that no crime is committed where a person takes temporary control of contraband in order to make a legal disposition of it by throwing it away, destroying it, or giving it to police.
Id. at 1230 (citations omitted). These facts, however, are completely distinguishable from the instant case.
A synopsis of the law surrounding the doctrine of momentary possession is contained in Coleman v. State, 1997 WL 775567 (Alaska App. Dec.17, 1997), a case extrapolating the concept as applied in drug possession cases to firearm possession. The Alaska appeals court traced the jurisprudence back to United States v. Santore, 290 F.2d 51 (2d Cir.1960), and described the divergent bodies of law that had sprung forth in California and Alaska. One group of cases remained narrow, requiring two elements: (1) brief possession, and (2) its purpose to be innocent disposal. This group came out of a California case, People v. Mijares, 6 Cal.3d 415, 99 Cal. Rptr. 139, 491 P.2d 1115 (1971), dealing with a defendant who disposed of his overdosed friend's heroin before driving him to the hospital for medical attention. An observer witnessed the defendant throwing the drugs into a field and led police to them. The Supreme Court of California reversed his conviction for possession because the defendant only had momentary control in order to dispose. This case is cited in Stanton.[2]
Stanton also references Adams v. State, 706 P.2d 1183 (Alaska App.1985). There, the defendant, a cocaine user, was in a public park with his family. A drug dealer placed a brown paper bag containing cocaine *1195 inside the defendant's car against his wishes. The dealer ignored the defendant's requests that he remove it and left. Forty-five minutes later, another drug user showed up and the defendant made him take the bag. Unknown to him, this second person was a police informant. The Adams court determined that the defendant's return of the contraband to an owner's agent after involuntary possession could allow his acquittal on at least one possession charge.
Florida has little jurisprudence on "passing control" or "momentary possession" as a defense. It has been applied under circumstances where a defendant tests or tastes the substance to see if it was what it was purported to be, a case about marijuana smoke ingested from a pipe, and one case about asportation of a dead cow to support a larceny charge. Lamanto v. State, 547 So.2d 1248 (Fla. 4th DCA 1989) (tasting cocaine); State v. Eckroth, 238 So.2d 75 (Fla.1970) (marijuana smoke); Driggers v. State, 96 Fla. 232, 118 So. 20 (1928) (cow asportation); Arant v. State, 256 So.2d 515 (Fla. 1st DCA 1972) (fingerprint on can containing young marijuana plants being harvested).
The closest case is Stanton, which makes it clear that, in Florida, the defendant's control must be temporary. We can discern no basis to expand this narrow body of law to include a right to indefinitely maintain possession of an illegal substance without a prescription. Ramsubhag's testimony was that he found the Xanax early in the evening. The children were gone by 9:00 p.m. Ramsubhag worked, driving his tow truck from 9:00 p.m. until 3:00 a.m., at which time he returned the truck and retrieved his boss' car. He did not account for the hours between 3:00 a.m. and 7:00 a.m. Ramsubhag had the drugs on his person for at least ten hours after his children left him, without explanation, despite the opportunity to dispose of them.
Although we agree with the recognition of this defense in Stanton and Mijares, we can discern no reason to apply it beyond facts that support a finding of a brief possession and an innocent disposal.
Therefore, the judgment and sentence are affirmed.
STEVENSON, C.J. and POLEN, J., concur.
NOTES
[1] § 397.301 et seq., Fla. Stat.
[2] Another California case expanded the defense, allowing its use when possession was for the sole purpose of disposal, no matter how long the contraband was held. People v. Cole, 202 Cal.App.3d 1439, 249 Cal.Rptr. 601 (1988). This later interpretation has resulted in split authority in California.