Filed 11/19/21  P. v. Poston CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CASSIDY POSTON,<br><br>    Defendant and Appellant. | B305105<br><br>(Los Angeles County<br>Super. Ct. No. BA474074)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed on October 28, 2021, is modified as follows: on page 8, in line 4, "*1.*   Mijares" is deleted.

There is no change in judgment.

_____

BAKER, Acting P. J.          MOOR, J.          KIM, J.

Filed 10/28/21  P. v. Poston CA2/5 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CASSIDY POSTON,<br><br>    Defendant and Appellant. | B305105<br><br>(Los Angeles County<br>Super. Ct. No. BA474074) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard S. Kemalyan, Judge.  Reversed.

Janet Uson, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Nima Razfar, Deputy Attorney General, for Plaintiff and Respondent.

After police made a U-turn to follow a car in which defendant Cassidy Poston (defendant) was a passenger, defendant's friend tossed a gun into her lap. Defendant initially "froze" and then opened her door and dropped the gun on the ground—no later than 20 seconds after it first landed in her lap. Officers recovered the gun, arrested defendant and the car's two other occupants, and the trial court (after a bench trial) ultimately convicted defendant of two firearm possession offenses. We consider whether the trial court properly rejected defendant's temporary possession defense. In particular, we consider whether the trial court's finding that defendant did not voluntarily discard the weapon is supported by substantial evidence and whether the trial court misunderstood the law in alternatively concluding the defense is unavailable to a defendant who seeks to prevent seizure of another person's contraband.

## I. BACKGROUND

### A. *The Evidence at Trial*

Los Angeles Police Department (LAPD) Officer Brandon Bolen testified that he and his partner, Officer Kumlander, were on patrol near 8th Avenue and Slauson Avenue in the afternoon of January 1, 2019. The officers drove a "dual purpose vehicle" that had front-facing red and blue emergency lights behind the windshield rather than on the roof. The vehicle was black and white with the LAPD logo on both sides. Officer Kumlander was driving and Officer Bolen rode in the passenger seat.

The officers noticed a black BMW heading in the opposite direction with a paper license plate, a non-functioning headlight, and tinted front windows. Officer Kumlander made a U-turn to conduct a traffic stop, and the BMW "[took] off at a high rate of

speed and roll[ed] [a] stop sign."  By this time, Officer Kumlander had not yet activated his emergency lights and siren.  As the pursuit continued, the BMW slowed in traffic and defendant opened the front passenger door and dropped something on the ground.  Officer Bolen briefly exited his police vehicle and retrieved the object: a handgun.[1]

After Officer Bolen picked up the gun, Officer Kumlander activated the car's lights and siren.  They called for backup and, about ten minutes into the pursuit, a police car with an "overhead light bar" (as opposed to the "forward-facing" emergency lights in the vehicle Officers Kumlander and Bolen were driving) took over as the lead pursuit vehicle.  Officers Kumlander and Bolen continued to participate in the pursuit, which ended a few minutes later in a multi-car collision.  All three occupants of the car were arrested.

Both defendant and the driver of the car, Jarika Donner (Donner), testified at trial.  Defendant had recently purchased the BMW and took possession of it only a few days earlier. Donner was driving because "[s]he has better . . . vision." Defendant testified that she and Donner were "look[ing] for something to eat" when defendant's friend, a male juvenile identified only as "Johnson," asked her to pick him up.  They did so and continued looking for something to eat.

Defendant testified she saw Officers Kumlander and Bolen driving in the opposite direction and realized they were behind

---

[1]      Video footage from Officer Bolen's body-worn camera and Officer Kumlander and Bolen's vehicle was admitted into evidence.  The body-worn video shows Officer Bolen taking a couple steps out of the vehicle to pick the gun up from the street. The gun is seen in the roadway between the police vehicle and other vehicles parked along the curb.

the BMW when Donner rolled through a stop sign and began to accelerate. After defendant turned and saw the police car, Johnson told Donner to keep going and tossed a gun into defendant's lap. Defendant had never seen Johnson with a gun before, and she did not know he had a gun until that moment.

Defendant "froze" when the gun landed in her lap. She testified that she "took . . . a second" to pick up the gun "because [she] didn't want to touch it." Johnson told her to throw it out of the car, and that is what she did. The gun was in defendant's lap for "[p]robably no more than 20 seconds." When the prosecution asked why she discarded the gun, defendant responded, "Because why would I want a loaded firearm sitting on my lap?" When asked why she threw it from the car as Johnson directed, defendant responded, "What else was I going to do with it?"

Donner testified she saw Johnson toss the gun into defendant's lap when the officers made a U-turn. Donner heard Johnson "order[ ]" defendant to discard the gun as he threw it into her lap. After rolling through a stop sign to evade the officers, Donner slowed in traffic and defendant discarded the gun.

The gun that Officer Bolen recovered was loaded. It was not registered to defendant and it had been reported stolen in San Bernardino County a couple months earlier.

Defendant was charged with carrying a concealed, loaded, and unregistered firearm in a vehicle (Pen. Code,[2] § 25400, subds. (a)(1), (c)(6)) and carrying a loaded, stolen firearm in public (§ 25850, subds. (a), (c)(2)).

---

[2]     Undesignated statutory references that follow are to the Penal Code.

*B.* *The Trial Court's Verdict and Sentencing*

At the conclusion of defendant's bench trial, her attorney argued defendant should be found not guilty because she established the defense of temporary possession. The prosecution maintained she could not rely on such a defense because, in its view, a Court of Appeal case (*People v. Paz* (2010) 181 Cal.App.4th 1413 (*Paz*)) "specifically says that if you're going to get rid of it to get away from the police or for some other limited reasons, that you cannot claim that you had temporary control of the contraband or the firearm."

After a several-day pause in the proceedings to "take a look at a few things," the trial court relied on CALCRIM No. 2305, which sets forth the elements of such a defense in the context of narcotics offenses, for guidance. As stated by CALCRIM No. 2305, a defendant must prove she possessed the controlled substance for a momentary or transitory period; the possession occurred in order to abandon, dispose of, or destroy the substance; and the defendant did not intend to prevent law enforcement officials from obtaining the controlled substance. (CALCRIM No. 2510, which defines the elements of this defense in the context of possession of a firearm by a prohibited person, is substantially similar.) The trial court also reviewed several cases discussing the temporary possession defense, including the *Paz* case cited by the prosecution.

The trial court then explained how it viewed the evidence "against this legal background." In the court's words: "I have assessed the facts of our case to determine if defendant has carried her burden of proof establishing the application of the subject offense. In doing so, the court will analyze the facts solely through the very testimony of [defendant]."

5

Even viewed solely through the lens of defendant's own account of what happened, the court found the temporary possession defense did not apply for two reasons. First, the court found defendant did not *voluntarily* dispose of the firearm because "[t]he evidence establishes that [defendant] disposed of the gun only after . . . Johnson told her to get rid of it." Second, and apparently in the alternative, the trial court found defendant could not rely on a temporary possession defense because she "intended to prevent law enforcement from obtaining the firearm. It was either that, or she would simply have exited the car and thrown it towards the police vehicle or given the firearm to the police. That sounds ridiculous, but that's what the law says. She did not exit the car and present it to the police as opposed to intending to prevent law enforcement from obtaining the firearm."

Having rejected defendant's temporary possession defense, the trial court found defendant guilty on both charges and sentenced her to three years in prison pursuant to section 25850, subdivision (c)(2).[3] The trial court further found defendant committed these offenses while released on bail or on her own recognizance in three other cases and imposed, consecutively, three two-year enhancements pursuant to section 12022.1. The total aggregate sentence was accordingly nine years in prison.

---

[3] The trial court found Donner guilty of violating Vehicle Code section 2800.2, which prohibits driving in willful or wanton disregard for safety of persons or property while fleeing from pursuing police officers.

6

## II. DISCUSSION

California courts recognize temporary possession for purposes of disposal as a defense to unlawful possession of narcotics and firearms. (*People v. Mijares* (1971) 6 Cal.3d 415, 421-424 (*Mijares*) [articulating defense in narcotics context]; *People v. Martin* (2001) 25 Cal.4th 1180, 1191 (*Martin*) [firearms context].) Here, defendant's prompt disposal of a gun tossed into her lap at the outset of a police pursuit falls squarely within the underlying policy "of encouraging disposal and discouraging retention of dangerous items such as controlled substances and firearms." (*Martin*, *supra*, at 1191.) The trial court's verdict, which we shall reverse, rests on evidentiary and legal misunderstandings.

First, the evidence. The trial court correctly read precedent to require a defendant's disposal of contraband must be voluntary to make out a temporary possession defense; a defendant who otherwise would have maintained possession of contraband cannot assert a temporary possession defense simply because another party compelled him or her to relinquish it. In this case, however, substantial evidence does not support the implicit inference drawn by the trial court, i.e., that defendant did not voluntarily dispose of the firearm because she would have maintained possession of the gun but for Johnson telling her to discard it.

Second, the law. In suggesting defendant should "simply have exited the car and thrown [the gun] towards the police," the trial court misunderstood what *Mijares* requires to establish the defense. A defendant disposing of someone else's contraband need not do so by surrendering it to police. For purposes of a temporary possession defense on facts like the facts here, fleeting

7

possession for disposal is sufficient even if done with the police bearing down on the disposing defendant.

### A. Overview of the Temporary Possession Defense
#### 1. Mijares

Our Supreme Court first recognized the temporary possession defense in *Mijares*.[4]  The defendant, who was convicted of possession of heroin, contended his possession was limited to removing heroin and related paraphernalia from an unconscious, overdosing friend's pockets and throwing the contraband into a field before driving the friend to a fire station for help.  (*Mijares*, *supra*, 6 Cal.3d at 418-419.)  A witness observed the defendant dispose of the contraband, and it was recovered without assistance from the defendant.  (*Id.* at 418.)

The Supreme Court held the jury should have been instructed that if it believed the defendant "had no contact with the narcotic other than to remove it from [his friend's] pocket for the purpose of disposal," it should find him not guilty.  (*Mijares, supra*, 6 Cal.3d at 419.)  The Supreme Court reasoned that allowing a conviction to rest on these facts "could result in manifest injustice to admittedly innocent individuals."  (*Id.* at 422.)  To illustrate, the Court considered a hypothetical scenario in which a witness who saw the defendant dispose of the contraband "briefly picked up the package and identified the substance as heroin and then placed the outfit back on the ground."  (*Ibid.*)  The Court held it could not "read the possession

---

[4]      This defense "has been alternately described as the 'temporary possession defense,' the 'momentary possession defense,' the 'transitory possession defense,' and the 'disposal defense.' [Citations.]" (*Martin, supra*, 25 Cal.4th at 1185, fn. 5.)

statutes to authorize convictions under such guileless circumstances."  (*Ibid.*)

Recognizing Mijares's circumstances were not entirely guileless—his presumed motive for removing contraband from his unconscious friend's pockets was to protect the friend from a potential possession charge—the Supreme Court emphasized that "certain actions relating to abandonment of narcotics may . . . fall within the proscription of section 135 of the Penal Code, forbidding the destruction or concealment of evidence." (*Mijares*, *supra*, 6 Cal.3d at 422.)  Nonetheless, "[t]he logic is inescapable and the rule is well-settled that actual abandonment of an object terminates possession thereof.  [Citations.]  It would be incongruous to adhere to cases declaring that abandonment concludes an existing narcotic possession and then hold that during the brief moment involved in abandoning the narcotic, a sufficient possession which did not previously exist somehow comes into being to support a conviction for possession of contraband." (*Ibid.*)

Our Supreme Court in *Mijares* made clear that the temporary possession defense is available to defendants disposing of other people's contraband when seizure is imminent.  Indeed, three of the cases from which the Supreme Court derived the defense involved precisely those facts. (*Mijares*, *supra*, 6 Cal.3d at 420-421.)  In *Garland v. State* (Miss. 1933) 146 So. 637 (*Garland*), the Supreme Court of Mississippi reversed a woman's conviction for possession of an intoxicating liquor based on her smashing her husband's jug of whiskey as police raided their home. (*Id.* at 138-140.)  Our Supreme Court analogized the conduct of the defendant in *Mijares* to that of the defendant in *Garland*, who took possession of the jug "for the sole purpose of

9

putting an end to the unlawful possession of" another. (*Mijares*, *supra*, 6 Cal.3d at 420.) In *People v. Landry* (1951) 106 Cal.App.2d 8 (*Landry*), the defendant nightclub owner attempted to flush narcotics down a toilet "just before . . . officers entered the building." (*Landry*, *supra*, at 10.) Our Supreme Court read *Landry* to suggest that "had the defendant made a better offer of proof to demonstrate the possibility that a third person had in fact planted the drugs, his handling solely for the purpose of flushing the heroin down the toilet would have been insufficient for conviction of possession." (*Mijares*, *supra*, at 421.) In *Jennings v. Superior Court* (1967) 66 Cal.2d 867 (*Jennings*), the defendant ran and threw a "narcotics injection kit" over a fence when he saw police officers approaching. (*Jennings*, *supra*, at 871.) As summarized in *Mijares*, the Supreme Court in *Jennings* "granted a writ directing the magistrate to permit [the] defendant, as a defense to possession, to introduce evidence concerning the fleeting purpose of his taking the narcotics outfit and casting it over the fence." (*Mijares*, *supra*, at 421.)

Although our Supreme Court held in *Mijares* that a third party's disposal of evidence that frustrates discovery by the authorities does not foreclose a temporary possession defense,[5] the Supreme Court also observed, understandably, that the temporary possession defense "in no way insulates from prosecution under the narcotics laws those individuals who, fearing they are about to be apprehended, remove contraband from their immediate possession." (*Mijares*, *supra*, 6 Cal.3d at 422.) In context (including the cases just reviewed), the Supreme

---

[5] By "third party," we mean someone other than the party who is initially in possession of contraband that is later transitorily possessed by another disposing of it.

Court's remark concerning individuals fearing imminent apprehension underscores the defense is obviously unavailable to persons who are already in possession of contraband and decide to discard it as law enforcement closes in. (See, e.g., *People v. Groom* (1964) 60 Cal.2d 694 [the defendant's disposal of marijuana as police drew near established his dominion and control over the drug as well as his knowledge of its illicit character]; *People v. Perez* (1963) 213 Cal.App.2d 436, 440 [the defendant's "attempt to get rid of the narcotic establishes not only his knowledge and control of the contraband but also his awareness of its illicit character"]; *People v. Rodrigues* (1938) 25 Cal.App.2d 393, 393 ["Here the facts fully justify the inference that appellant was in possession of so much of the drug as he threw out of the window, and that is sufficient to sustain the judgment"].)

Following *Mijares*, temporary possession was first recognized as a defense to offenses relating to possession of a firearm, just like narcotics possession offenses, in *People v. Hurtado* (1996) 47 Cal.App.4th 805 (*Hurtado*). In a later case, *Martin*, our Supreme Court approved of *Hurtado*'s extension of the defense to firearms cases. (*Martin*, *supra*, 25 Cal.4th at 1191 ["We agree with the *Hurtado* court that recognition of a 'momentary possession' defense serves the salutary purpose and sound public policy of encouraging disposal and discouraging retention of dangerous items such as controlled substances and firearms"].)

The *Martin* case was followed by the Court of Appeal's decision in *Paz*, *supra*, 181 Cal.App.4th 1413. *Paz* holds that fleeting possession alone is insufficient to support a temporary possession defense. (*Id.* at 1417 ["No case that we have found

11

suggests that transitory possession cannot be punished on the basis of its brevity alone"].)  In its discussion of what more is required, *Paz* explained that the disposal must be "voluntary." (*Id.* at 1416.)  Specifically, the defendant in *Paz* was convicted, among other things, of possession of methamphetamine for sale. (*Id.* at 1415.)  The evidence at trial indicated the defendant came into possession of a small container of methamphetamine and then discarded it during a fight with another person who had the defendant in a chokehold and was directing a bystander to call the police.  (*Id.* at 1415, 1417.)  The Court of Appeal held these facts did not support a temporary possession defense for two reasons: there was no evidence the defendant took possession of the drugs to dispose of them ("he possessed [them] with every intention of keeping [them] for himself") and there was no evidence that he discarded them "for any reason other than to avoid strangulation or arrest."  (*Id.* at 1417.)  Under these circumstances, the defendant was no more entitled to the temporary possession defense than "a mugger, chased by police into a cul-de-sac, [who] threw down the victim's wallet."  (*Ibid.*)

B.    *No Substantial Evidence Supports the Trial Court's Conclusion that Defendant's Disposal of the Firearm Was Involuntary*

The trial court was clear that it was accepting defendant's testimony as true in rendering its verdict.  That testimony, in our view, establishes both elements of a temporary possession defense: (1) she possessed the gun for no longer than 20 seconds and, for at least some of this time, she was "froze[n]" with the gun sitting where it landed in her lap, and (2) she did not want the

12

gun in her lap, and when she eventually picked it up, she did so solely to dispose of it.

In finding that defendant did not voluntarily discard the gun, the trial court focused on her testimony that she did so only after Johnson directed (or, in Donner's words, ordered) her to do so. This is not substantial evidence that defendant's actions were involuntary, however, because Johnson's "order" corresponded with defendant's own purpose in handling the gun, namely, to get rid of it; as she put it, "What else was [she] going to do with it?" In finding otherwise, the trial court appears to have erroneously construed defendant's initial reluctance to *touch* the gun, which gave Johnson time to speak up, as reluctance to dispose of it.

This case is therefore unlike *Paz* where there were external forces overcoming the defendant's desire to maintain control of contraband. Here, there is no evidence, like there was in *Paz*, that defendant had "every intention of keeping [the gun] for [her]self."[6] (*Paz*, *supra*, 181 Cal.App.4th at 1417.) There is no reason to believe, for example, that defendant did as Johnson said because she feared him; he was her friend and, at the relevant moment, she was armed and he was not. Put simply, Johnson ordering defendant to do what she would have otherwise done does not establish what she did was involuntary.

---

[6] In arguing the contrary, the Attorney General relies on Officer Bolen's testimony and the dash camera video footage. Neither, however, can illuminate what happened in the car before defendant disposed of the firearm. Put differently, the officer's testimony and the video recording cannot as a logical matter suggest defendant possessed the gun in a manner other than the temporary manner in which she testified—testimony the trial court accepted.

C.    *The Trial Court's Alternative Rationale Misunderstands What Must Be Proven to Establish Temporary Possession*

The trial court's alternative ruling that defendant's temporary possession defense fails because she intended to prevent the police from obtaining the gun has no basis in the governing case law.  The possibility that defendant might have disposed of the gun in a more direct or conspicuous manner might conceivably bear on her credibility as to how long she possessed the gun and her purpose in discarding it,[7] but it does not preclude a temporary possession defense.

The Supreme Court in *Mijares* did not inquire as to why the defendant threw his unconscious friend's heroin stash into a field rather than surrendering it at the fire station where he sought help.  Further, as we have discussed, the Supreme Court derived the defense from a line of cases including *Garland*, *Landry*, and *Jennings*, that involved the intentional destruction of contraband during police raids.  A defendant's intent to prevent law enforcement from obtaining contraband ordinarily bars a temporary possession defense only when the defendant previously possessed the contraband for purposes other than disposal.[8]  That condition was not satisfied when the defendant in

---

[7]    Although the trial court did not question defendant's credibility in its analysis of her temporary possession defense, the fact that the officers were able to recover the gun without breaking off the pursuit is consistent with her testimony that she only wanted to dispose of it as quickly as possible.

[8]    Defendant was not charged with destroying or concealing evidence and we therefore do not reach the question of whether or

14

*Mijares* sought to protect his overdosing friend from a possession charge, and it is not satisfied in this case by defendant's disposal of a gun that landed unannounced and uninvited in her lap at the outset of a police pursuit. Regardless of whether defendant hoped the pursuing officers would not notice her drop the gun, the crucial facts are that she possessed the gun only briefly and for the sole purpose (once put in the position by Johnson) of dropping it out of the car.

The trial court seems to have apprehended the rather absurd result its understanding of the law would require— conceding its suggestion that defendant should "simply have exited the car and thrown it towards the police" was "ridiculous." Our Supreme Court's development of the temporary possession defense does not compel such a result that would run contrary to weighty policy concerns. Specifically, in *Martin*, our Supreme Court emphasized that the temporary possession defense furthers the important policy of encouraging disposal of dangerous items such as controlled substances and firearms. (*Martin*, *supra*, 25 Cal.4th at 1191.) The trial court's belief that defendant must have leapt out of the BMW with gun in hand and quickly motioned to toss the gun in the direction of pursuing officers would require a course of conduct likely to have been more dangerous to herself, the police, and her friends than disposing of the gun in the manner which she did. We believe no such course of conduct was required to establish temporary possession barring conviction, as it would undercut the very public policy that the temporary possession defense is designed to further.

when such a conviction could be had in circumstances indicative of temporary possession.

DISPOSITION

The judgment is reversed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, Acting P. J.

We concur:


MOOR, J.


KIM, J.

16